UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GP BRANDS, INC.,
a Florida corporation,

        Plaintiff,

v.                                CASE No. 8:15-cv-2912-T-27TGW

TRACIE NICHOLE WILLIAMS,

        Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff seeks damages and injunctive relief for trademark infringement and breach of contract. The defendant failed to defend this case. Consequently, the Clerk entered a default against the defendant. The plaintiff has filed a Motion for Default Judgment (Doc. 16). The well-pled complaint allegations establish the defaulting defendant's liability. Because the defendant has failed to respond to the plaintiff's allegations of trademark infringement, I recommend that the motion be granted and that default judgment be entered against the defendant, Tracie Nichole Williams, in the amount of $28,353.58, along with injunctive relief.

I.

The plaintiff is the franchisor of the Goin' Postal franchise chain, whose core business involves shipping packages through various vendors such as the U.S. Postal Service, FedEx, UPS, and DHL (Doc. 4, p. 2). Multiple trademarks

are owned and federally registered by the plaintiff in connection with the shipping business (Doc. 4-1). The plaintiff acquired ownership of the marks and all rights therein through assignment from the predecessor franchisor, Goin' Postal Franchise Corporation (Doc. 4-2). Plaintiff sells new franchise opportunities nationwide in addition to acting as the franchisor to existing Goin' Postal stores (Doc. 4, p. 3). The plaintiff's revenue is generated through the receipt of monthly royalty payments from franchisees (id.).

On or about January 12, 2015, the plaintiff and defendant entered into a Franchise Agreement (Doc. 4-3), which stated that the defendant would operate a Goin' Postal franchise store located at 1523 Chaffee Road South, #12, Jacksonville, Florida 32223. The Franchise Agreement was for a 15-year term and stated that the defendant was obligated to pay monthly royalties to the plaintiff throughout that 15-year term (Doc. 4-3, pp. 96-97)[1]. The Franchise Agreement included a Non-Competition and Non-Solicitation Agreement (Non-Competition Agreement), which prohibited the defendant from operating directly or indirectly a business which is the same as, or substantially similar to, a Goin' Postal franchise for a two-year period following the conclusion of the Franchise Agreement, whether by termination or expiration (Doc. 4-3, pp. 144-148).

---

[1]Citations are to the pages assigned by the CM/ECF system at the top of the document.

Beginning in July 2015, the defendant stopped making the required monthly royalty payments to the plaintiff (Doc. 4, p. 3). After several extensions expired without the payments being made, the plaintiff terminated the Franchise Agreement on December 7, 2015, for failure to make the required payments (id., p. 4). The plaintiff states the defendant was notified of the termination and reminded of the associated termination of rights (id.).

Despite this, the defendant continued to operate the franchise location as a Goin' Postal franchise, using the plaintiff's trademarks/service marks and proprietary software as her own. The defendant displayed Goin' Postal signs on the interior and exterior of her business (see Doc 4-5) and issued receipts of transactions that indicated to customers that they had done business with a Goin' Postal franchise (see Doc. 4-6).

Consequently, the plaintiff filed this lawsuit on January 5, 2016, asserting claims against the defendant for trademark infringement and breach of obligations under the Franchise Agreement and Non-Competition Agreement. The Amended Complaint alleges that the defendant breached the Franchise Agreement by failing to make required royalty payments and knowingly and intentionally using the plaintiff's trademarks without license or permission with the intent to cause consumer confusion. The plaintiff seeks: (1) injunctive relief prohibiting the use of the plaintiff's trademarks; (2) damages for the willful, knowing, and calculated use

-3-

of the plaintiff's trademarks in violation of the Lanham Act, 15 U.S.C. § 1117; (3) treble damages pursuant to 15 U.S.C. § 1117(b); (4) injunctive relief, in accordance with the Non-Competition Agreement, prohibiting the operation of, or association with, businesses similar to the Goin' Postal brand for a period of two years; and (5) a finding of breach of contract and damages for that breach.

The plaintiff served the defendant with a summons and copy of the plaintiff's Amended Complaint on January 12, 2016 (Doc. 8). The defendant failed to file a response to the plaintiff's complaint as required by Rule 12, F.R.Civ.P. As a result, the Clerk of Court entered a default against the defendant on February 11, 2016 (Doc. 10).

On February 23, 2016, the plaintiff filed its first Motion for Default Judgment (Doc. 11). The motion requested a permanent injunction against the defendant's use of the plaintiff's marks, an accounting of the defendant's profits, three times the defendant's profits pursuant to U.S.C. §1117(b), enforcement of the Non-Competition Agreement, $19,290.00 for breach of contract, and the plaintiff's attorney's fees and costs.

Thereafter, an Order was issued on March 24, 2016, directing the defendant to provide the plaintiff with an accounting of the defendant's profits from December 7, 2015, to the present (Doc. 13). The defendant filed a motion requesting additional time to respond to the Order (Doc. 14), and such motion was

granted with a thirty-day extension on April 14, 2016 (Doc. 15).  On or about May 14, 2016, the defendant provided the plaintiff with documents accounting for profits from December 7, 2015, to April 20, 2016 (Doc. 20).

In response to the defendant's failure to respond to any allegations in the plaintiff's Amended Complaint, the plaintiff filed a Second Motion for Default Judgment (Doc. 16).  The defendant filed a one-page document styled Motion of Opposition which asserted that, because of additional expenses she did not provide to the plaintiff, she had no profit (Doc. 19).

A hearing on the plaintiff's Second Motion for Default Judgment was held on June 16, 2016 (see Doc. 21).  The plaintiff's counsel appeared at the hearing.  No one appeared on behalf of the *pro se* defendant, who was notified of the hearing by United States mail.

## II.

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Rule 55(b)(2).  DirecTV, Inc. v. Griffin, 290 F.Supp. 2d 1340, 1343 (M.D. Fla. 2003).

Pursuant to Rule 55(b)(2), F.R.Civ.P., a party may seek from the court a default judgment for the amount of damages caused by the defaulting party. The plaintiff seeks entry of a default judgment against Tracie Nichole Williams in the amount of $47,110.74 (see Doc. 16, p. 7). This sum is comprised of $27,820.74 in damages under the Lanham Act, and $19,290.00 for breach of contract, which is predicated upon $2,730.00 owed to the plaintiff as royalties at the termination of the contract and $16,560.00 in liquidated damages pursuant to the terms of the Franchise Agreement.

### III.

The plaintiff alleges that the defendant's use of the Goin' Postal trademarks constitutes trademark infringement in violation of the Lanham Act (Doc. 4). In order to prevail on the claim of trademark infringement, the plaintiff must establish: (1) that it possessed a valid mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale ... or advertising of any goods"; and (5) that the defendant used the mark in a manner likely to confuse consumers. North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218 (11th Cir. 2008).

The plaintiff has established that it possesses valid marks by identifying the registration numbers of each mark and providing copies of the marks

from the U.S. Patent and Trademark Office's website (see Doc. 4-1). 15 U.S.C. 1115(a). Further, the evidence clearly establishes that the defendant used the marks, since she used them under the licensing agreement and continued to use them after the agreement was terminated. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)(by defaulting, the defendant is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact" for purposes of liability).

Moreover, the plaintiff's evidence of a receipt for services rendered (see Doc. 4-6) demonstrates that the marks were used in commerce and in connection with the sale and advertising of goods. Finally, the plaintiff's well-pled allegations establish a likelihood of confusion, as the marks are strong; the plaintiff and the defendant are using the same marks; the services are the same; the customers appear to be the same; and the defendant's intent seems to be to take advantage of the plaintiff's marks. See Alliance Metals, Inc., of Atlanta v. Hinely Industries, Inc., 222 F.3d 895, 907 (11th Cir. 2000).

Additionally, a typical case seeking relief under the Lanham Act for trademark infringement or unfair competition focuses on whether there is a likelihood of confusion from the use of the allegedly infringing mark. See Burger King Corp. v. Mason, 710 F.2d 1480, 1491-92 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984); University of Florida v. KPB, Inc., 89 F.3d 773 n.7 (11th Cir. 1996). In this respect, the plaintiff alleges that the defendant "knowingly continued

to operate the franchise location ... using the plaintiff's trademarks/service marks and proprietary software as her own" (Doc. 4, p. 4).  On this point, the plaintiff has presented evidence that, notwithstanding the termination of the Franchise Agreement, the defendant continued to use the Goin' Postal trademarks in signs on the interior and exterior of her business and on issued receipts of customer transactions (see Doc. 4-5; Doc. 4-6).  The Eleventh Circuit has held that the likelihood of confusion may be established by proof that trademarks were used without the franchisor's consent after termination of the franchise agreement. Burger King Corp. v. Mason, supra, 710 F.2d at 1492-1493.

This principle applies here, where the defendant continues to operate a shipping business that uses the franchisor's marks.  The evidence shows that the defendant's store looks like an authorized Goin' Postal franchise, provides shipping services like an authorized Goin' Postal franchise, and shares the same name as a former Goin' Postal franchise (Doc. 4-5; Doc. 4-6).  Thus, the likelihood that a consumer would erroneously conclude that the defendant's business is affiliated with Goin' Postal is strong.

As indicated, the defendant has not presented any evidence in response to the plaintiff's evidence.  The defendant has submitted a response in opposition to the motion for default judgment, but that unverified response is wholly inadequate.

Moreover, photographic evidence of the defendant's storefront shows that she offers services like shipping, packaging, faxing, and copying while displaying the "Goin' Postal" name. Thus, the defendant's conclusory statement that she does not provide services that are also provided by Goin' Postal is not only unsubstantiated, but negated by the plaintiff's evidence.

In short, the defendant has not raised any meaningful response to the plaintiff's claims of trademark infringement. Therefore, the plaintiff has established those claims.

Finally, to establish the defendant's liability for breach of contract, Florida law requires the plaintiff to establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009). Here, the well-pled allegations show the existence of a valid Franchise Agreement, which the defendant violated by failing to pay royalties and by continuing to use Goin' Postal's marks after the termination of the agreement, thereby resulting in damage to the plaintiff. Accordingly, the plaintiff is entitled to judgment as to liability on its claims of trademark infringement and breach of contract.

IV.

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of

-9-

default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). "[A] judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979). In this case, a hearing was conducted to establish the amount of damages. As indicated, the plaintiff seeks: (1) the entry of a permanent injunction under the Lanham Act and for enforcement of the Non-Competition Agreement; and (2) monetary damages for violations of the Lanham Act and for breach of contract (Doc. 4).

A.    Lanham Act

The plaintiff requests an award of $9,273.58, representing the defendant's profits, pursuant to 15 U.S.C. 1117 of the Lanham Act (Doc. 16, p. 5). This amount is based upon an accounting of the defendant's sales totaling $9,895.98, less defendant's costs of $622.40 (id., p. 5; Doc. 16-3).

A plaintiff is entitled to a defendant's profits when: "(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct." Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 Fed. Appx. 899, 902 (11th Cir. 2007).

An award of profits is justified in this case for all of those reasons. Thus, the defendant was unjustly enriched by continuing to represent her business,

and making sales, as a Goin' Postal franchise without authorization. See Id. at 903

(A willful violation of a trademark occurs when the infringer "knowingly and

deliberately cash[es] in upon the good will of the infringed."). The conduct was

willful and deliberate, as the defendant knew that the Franchise Agreement was

terminated for failure to pay royalty fees, yet she continued to use the plaintiff's

trademarks and represent her business as a Goin' Postal shipping store. Notably,

even the filing of a lawsuit was insufficient to stop the unlawful conduct. Thus,

plaintiff's counsel represented in a filing dated May 16, 2016, that the defendant

(Doc. 16, pp. 2-3):

> continues to use the Plaintiff's protected trademarks
> without authorization. The plaintiff regularly receives
> complaint calls from customers who have visited the
> Defendant's business under the false belief that the
> Defendant's business is a Goin' Postal franchise. These
> customers have stated that the Defendant's store still
> prominently displays the Plaintiff's trademarks as their
> own with signage inside and outside.

Therefore, the plaintiff has that shown it is entitled to the defendant's profits under

15 U.S.C. 1117(a).

"In assessing profits the plaintiff shall be required to prove defendant's

sales only; [the] defendant must prove all elements of cost or deduction claimed."

Id. Furthermore, "Lanham Act damages may be awarded even when they are not

susceptible to precise calculations." Aronowitz v. Health-Chem Corp., 513 F.3d

1229, 1241 (11th Cir. 2008). Thus, all monetary awards under Section 1117(a) are

"subject to the principles of equity," and judgment may be entered "for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. 1117(a).

The defendant has submitted to the court an accounting which reflects sales totaling $9,895.98 for the specified time period (see Doc. 20).  Next, the court determines what, if any, costs or expenses are properly deducted from that sum.  15 U.S.C. 1117(a).  The defendant's accounting includes costs of $622.40 (Doc. 16-3, p. 22).  The defendant states that her accounting does not include "rent lights water and internet cable and phone" (Doc. 20, p. 1).  However, she does not quantify those costs, or show that such costs are properly deductible.  See 15 U.S.C. 1117(a) ("In assessing profits...[the] defendant must prove all elements of cost or deduction claimed.").[2]  Therefore, after deducting the established costs of $622.40 from the sales of $9,895.98, there is a profit of $9,273.58.

The plaintiff also requests an award of treble damages pursuant to 15 U.S.C. 1117(b)(1) (Doc. 16, p. 5).  That provision permits an award of three times the infringer's profit when the infringer "intentionally us[es] a mark or designation, knowing such mark or designation is a counterfeit mark ... in connection with the sale, offering for sale, or distribution of goods or services."  The plaintiff, however, has not cited any authority that a former franchisee's continued use of a trademark

---

[2]The defendant, notably, had ample time to submit documentation, or make an argument at the hearing regarding any additional costs, but she did neither.

constitutes "counterfeiting" under this provision.  Further, there is persuasive authority to the contrary.  See U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1192 (6th Cir. 1997) ("[Section] 1117(b) does not apply where, as in this case, a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated. Although the use of an original trademark is without authorization, it is not the use of a counterfeit mark."). Therefore, the plaintiff has not established entitlement to treble damages.

In sum, I recommend that the plaintiff be awarded $9,273.58, pursuant to 15 U.S.C. 1117(a), for the defendant's violations of the Lanham Act.

B.     Breach of Contract

The plaintiff also requests an award of $19,290.00 in damages for the defendant's breaches of the Franchise Agreement (Doc. 16, p. 6; see also Doc. 4, pp. 1, 3). This amount is compromised of two elements of damage: $2,730 in unpaid royalty fees, and $16,560 in liquidated damages.

The Franchise Agreement provides that the franchisee is to pay monthly a royalty fee of $420 (Doc. 4-3, pp. 15, 102).   According to the uncontroverted representations of the plaintiff, the defendant ceased paying her royalty fees in July 2015 (Doc. 4, p. 3). The Franchise Agreement was terminated on December 7, 2015 (id., p. 4). This amounts to six months of unpaid royalty fees, which total $2,520 ($420 x 6).

The plaintiff also seeks an award of $16,560 in liquidated damages. Section 13.5 of the Franchise Agreement includes a provision for "Payment of Liquidated Damages" (Doc. 4-3, p. 120). It provides that, if GP Brands terminates the Franchise Agreement prior to its expiration in accordance with the Franchise Agreement, it has "the right...to require that Franchisee pay [it] liquidated damages as provided in Section 13.5(c)," which provides that liquidated damages in this circumstance equals three years of monthly royalty payments (see id., pp. 120-121). As indicated, the Franchise Agreement was terminated in December 2015. Therefore, the plaintiff owes royalty fees for the years 2016, 2017, and 2018. The monthly royalty fees for those years were $440, $460, and $480 (id., p. 17). This amounts to liquidated damages of $16,560 ($440 x 12 + $460 x 12 + $480 x 12).

I therefore recommend that the plaintiff be awarded $19,080 in damages for the defendant's breaches of the Franchise Agreement.

C.    Permanent Injunction

Finally, the plaintiff requests that the court enter a permanent injunction precluding the defendant from using its trademarks and unlawfully competing against it (Doc. 16, pp. 3-4, 5-6). "Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark." Aronowitz v. Health-Chem Corp., supra, 513 F.3d at 1242.

A plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. <u>Angel Flight of Ga., Inc.</u> v. <u>Angel Flight America, Inc.</u>, 522 F.3d 1200, 1208 (11th Cir. 2008).

The plaintiff's uncontroverted allegations show that the defendant's unauthorized use of its marks presents a clear threat of irreparable harm to the plaintiff's business and goodwill. Furthermore, the defendant continued to blatantly infringe upon the plaintiff's marks after the termination of the Franchise Agreement and during the pendency of this lawsuit. Therefore, it is clear that, absent this injunction, the defendant is liable to continue to infringe the plaintiff's marks.

The last two factors, the balance of hardships between the plaintiff and defendant, and the public interest, clearly favor the entry of a permanent injunction. The defendant has presented no basis upon which to conclude that the balance of hardships favors her. Moreover, the entry of a permanent injunction under these circumstances supports the public interest of avoiding unnecessary confusion. <u>See</u> <u>Angel Flight of Ga., Inc.</u> v. <u>Angel Flight Am., Inc.</u>, <u>supra</u>, 522 F.3d at 1209.

Accordingly, I recommend the entry of a permanent injunction against the defendant.

In this regard, I recommend that the defendant be permanently enjoined from use of the following trademarks or colorable imitations thereof:

> Goin' Postal
> the Goin' Postal character
> Goin' Postal Your Friendly Neighborhood Shipping Center
> Delivering the Best of America
> Postage for Patriots
> GP Postal (trademark application submitted).

The marks and designs are depicted and described in the attachment to the amended complaint (Doc. 4-1).

Furthermore, the parties executed a Non-Competition and Non-Solicitation Agreement (Doc. 4-3, pp. 144-148), the validity of which is uncontroverted. By executing the Non-Competition Agreement, the defendant agreed that the plaintiff had a legitimate business interest in protecting its franchises and franchisees from unfair competition, and that the stated terms of non-competition were necessary (see id.). Plaintiff's counsel clarified at the hearing on this matter that this non-competition clause does not preclude the defendant from continuing her freight business, which is distinct from Goin' Postal's residential parcel and packing business.

In particular, the plaintiff requests that the defendant be enjoined permanently from, directly or indirectly, owning, maintaining, engaging in,

associating with, being employed by, advising, investing in, or having any interest

in any business which is the same as, substantially similar to, or competitive with,

any Goin' Postal packing and shipping store, in any geographic location, for two

years after the conclusion of the Franchise Agreement, which date would be

December 7, 2017 (see Doc. 4, pp. 7, 9). I therefore recommend that a permanent

injunction be entered in accordance with this language, with the specification that

the defendant is not enjoined from continuing her freight business.

Finally, it is noted that the plaintiff mentioned in the wherefore clause

of the amended complaint and the motion for default judgment a request for "costs

and fees" (Doc. 4, p. 6; Doc. 16, p. 7). However, that request was not mentioned

during oral argument. Further, the plaintiff has not made an argument in support of

this relief, or stated the amount of such costs and fees. Therefore, they are not

addressed in this report and recommendation.

V.

For the foregoing reasons, I recommend that the Plaintiff's Second

Motion for Default Judgment (Doc. 16) be granted to the extent that final judgment

be entered for the plaintiff on its claims of trademark infringement and breach of

contract, in the amount of $28,353.58, with interest thereon in accordance with 28

U.S.C. 1961. I further recommend the entry of a permanent injunction which, as

outlined above, precludes the defendant's use of the plaintiff's marks and enjoins the defendant from unlawfully competing with the plaintiff.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 10, 2016

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.